IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

EQUAL EMPLOYMENT                    )
OPPORTUNITY COMMISSION,             )
                                    )
            Plaintiff,              )
                                    )
v.                                  )        CIVIL ACTION NO. 13-00476-CB-M
                                    )
CATASTROPHE MANAGEMENT              )
SOLUTIONS,                          )
                                    )
            Defendant.              )

## OPINION and ORDER

This matter is before the Court on a motion to dismiss filed by the defendant,

Catastrophe Management Solutions (CMS).  (Doc. 7)  Defendant argues that the

complaint filed by the Equal Employment Opportunity Commission (EEOC), which

alleges that CMS engaged in intentional racial discrimination, fails to state a claim

upon which relief can be granted.  The EEOC has filed a response to the motion to

dismiss (Doc. 13), and CMS has filed a reply brief (Doc. 16).  After due consideration

of the issues and the applicable law, the Court finds that the motion to dismiss is due

to be granted.

**The Complaint**

The Complaint's pertinent factual and legal assertions are straightforward

and brief.  The EEOC alleges that CMS "engaged in unlawful employment practices. . .

in violation of 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 2000e-2(m) [Title VII] by

implementing a policy that prohibited employees from wearing dreadlocks and

enforcing that policy against Chastity C. Jones."[1]  (Compl. ¶ 7, Doc. 1.)  CMS's policy

states:

> All personnel are expected to be dressed and groomed in a manner
> that projects a professional and businesslike image while adhering to
> company and industry standards and/or guidelines. . .hairstyles
> should reflect a business/professional image.  No excessive hairstyles
> or unusual colors are acceptable. . .

(*Id.* ¶ 8.)

CMS "interpreted [this] policy to prohibit dreadlocks," made an offer of

employment to Jones, on the condition that Jones "cut[ ] off her dreadlocks, and then

withdrew the offer. . . when she declined [to cut her dreadlocks]."  (*Id.* ¶¶ 9-10.)

The Complaint alleges that "Defendant's application of its policy to prohibit

dreadlocks constitutes an employment practice that discriminates on the basis of

race, black" and that the policy has "deprive[d] [Jones] of equal employment

opportunities and [ ] otherwise adversely affect[ed] her status as an employee

because of her race."  (*Id.* ¶ 12.)  Finally, the Complaint asserts that "the [alleged]

unlawful employment practices . . . were intentional [and]. . . done with malice or

reckless indifference" to [Jones's] federally protected rights."   (*Id.* at ¶¶ 13-14.)

**Standard of Review**

---

[1] The EEOC has authority to bring a civil action against an employer for
violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-1 *et seq.*
under 42 U.S.C. §§ 2000e-2(a) (1) and 2000e-2(m).  The former makes it unlawful
for an employer "to fail or refuse to hire ... because of [an] individual's race, color
religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).  The latter provides that
"an unlawful employment practice is established when the complaining party
demonstrates that race, color, religion, sex, or national origin was a motivating
factor for any employment practice, even though other factors also motivated the
practice."  42 U.S.C. § 2000e-2(m).

A complaint must "set forth a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court set forth the parameters of a well-pleaded complaint.  A claim for relief "must set forth enough factual matter (taken as true) to suggest [the required elements of a cause of action]."  *Id*. at 556; *see also Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (applying Twombly).   Furthermore, a complaint must "provide the defendant with fair notice of the factual grounds on which the complaint rests." *Jackson v. Bellsouth Telecomm., Inc.*, 372 F.3d 1250, 1271 (11th Cir. 2004).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court further refined the threshold requirements for a claim under Rule 8(a)(2).

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

*Iqbal*, 556 U.S. 678-79 (quoting Fed. R. Civ. P. 8(a)(2)) (other citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**Legal Analysis**

CMS has moved to dismiss because the facts alleged in the Complaint do not support a plausible claim for intentional discrimination.  The EEOC's Complaint asserts that CMS refused to hire Jones because she is black.  The factual allegations in support of that claim are simple.  CMS interpreted its grooming policy to prohibit dreadlocks.  Because Jones refused to cut her dreadlocks, CMS rescinded its offer to hire her. CMS argues that a grooming policy based on a "mutable" characteristic, such as hairstyle, is not racially discriminatory.  The EEOC's response is twofold. First, it contends that the pleading standard urged by CMS is too stringent and that it is not required to plead its legal theory in the Complaint.  Second, it argues, for various reasons, that a company policy that prohibits dreadlocks is racially discriminatory.

### *Complaint Must Contain Facts to Support a Viable Legal Theory*

The EEOC's argument that it need not plead a legal theory is a statement of the obvious. The issue is whether the Complaint contains sufficient factual allegations to support a claim of intentional discrimination.  While it is not necessary to plead the elements of a prima facie case of discrimination, "a pleading [cannot] survive dismissal when it consist[s] of only the barest of conclusory allegations without notice of the factual grounds on which they purport to be based."  *Jackson*, 372 F.3d at 1271.  As case law cited by the EEOC acknowledges, a complaint need not allege a legal theory, but it must "'contain inferential allegations from which [a court] can identify each of the material elements necessary to sustain a recovery under *some* viable legal theory.'"  *Balaschak v. Royal Caribbean Cruises*,

*Ltd.*, 2009 WL 8659594 (S.D. Fla Sept. 14, 2009) (quoting *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001)).

The EEOC implies that the pleading standard is somehow different or less stringent with respect to the element of intent.  Citing *Iqbal,* it argues that "in disparate treatment cases like this one—where the *fact* of employer intent is critical --a court should be especially wary of dismissing the complaint for failure to state a claim."  (Pl.'s Resp. 5, Doc. 13.)  The cited portion of *Iqbal* does not support such a conclusion.  There the Court addressed the respondent's claim that Fed. R. Civ. P. 9(b) "expressly allow[ed] him to allege [ ] discriminatory intent 'generally,' . . . [i.e.,] with a conclusory allegation."  *Iqbal*, 556 U.S. at 686.  The Court rejected that argument, holding that the term "generally" in Rule 9(b) "merely excuses a party from pleading discriminatory intent under [the] elevated pleading standard" applicable to fraud claims. *Id.* at 687.  After rejecting the argument that Rule 9(b) provided special dispensation for pleading intent "generally," the Court returned to the applicable pleading requirements of Rule 8, which "does not empower a respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."   *Id.*

### *The Facts Alleged in the Complaint Do Not Support a Plausible Claim of Intentional Discrimination*

It has long been settled that employers' grooming policies are outside the purview of Title VII.  In *Willingham v. Macon Tel. Publ'g Co.*, 507 F.2d 1084 (5th Cir. 1975) (en banc), the former Fifth Circuit addressed the discriminatory impact of a grooming policy in the context of a sex discrimination claim.  Pointing out that the purpose of Title VII is to provide equal access to the job market, the court held:

> Equal employment *opportunity* may be secured only when employers
> are barred from discriminating against employees on the basis of
> immutable characteristics, such as race and national origin. . . . [A]
> hiring policy that distinguishes on some . . . ground [other than sex],
> such as grooming codes or length of hair, is related more closely to the
> employer's choice of how to run his business than to equality of
> employment opportunity. . . . Hair length is not immutable and in the
> situation of employer vis a vis employee enjoys no constitutional
> protection. If the employee objects to the grooming code he has the
> right to reject it by looking elsewhere for employment, or
> alternatively he may choose to subordinate his preference by
> accepting the code a long with the job.

*Id.* at 1091.[2]

Many courts have addressed policies restricting hairstyles and have

determined such restrictions to be nondiscriminatory. For example, in *Rogers v.*

*American Airlines, Inc.*, 527 F. Supp. 229 (S.D.N.Y. 1981), the plaintiff challenged her

employer's grooming policy that prohibited employees from wearing an "all-braided

hairstyle," asserting that it discriminated on the basis of race and sex. *Id.* at 231.

Rogers argued that the "cornrow" hairstyle had cultural and historical significance

to black women. *Id.* at 231-32. The court rejected this argument and dismissed the

complaint, holding that "an all-braided hairstyle . . . is an 'easily changed

characteristic,' and, even if socioculturally associated with a particular race or

nationality, is not an impermissible basis for distinctions in the application of

employment practices by an employer." *Id.* at 232.

In *Eatman v. United Parcel Serv.*, 194 F.Supp.2d 256 (S.D.N.Y. 2002), UPS's

policy grooming policy required company drivers to wear hats to cover

"unconventional" hairstyles. Eatman, who wore his hair in dreadlocks, was

---

[2] Cases decided by the Fifth Circuit prior to October 1, 1981 are binding
precedent. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

ultimately fired for his refusal to wear a hat.  Eatman filed an employment discrimination action under Title VII asserting, *inter alia*, a claim for racial discrimination based on UPS's "facially discriminatory grooming policy."  *Id.* at 261-62.  Eatman argued that the company's appearance guidelines were "facially discriminatory because they single[d] out African-Americans on the basis of a characteristic—locked hair--that is unique to African-Americans."  *Id.* at 262.  The court concluded that "locked hair" is not unique to African Americans and that "it is beyond cavil that Title VII does not prohibit discrimination on the basis of locked hair."  *Id.*

Other courts have reached the same conclusion regarding various types of restrictions on hairstyles.  In *Pitts v. Wild Adventures, Inc.*, 2008 WL 1899306 (M.D. Ga. Apr. 25, 2008), the plaintiff argued that the defendants grooming policy was "racially discriminatory because it prohibit[ed] 'Afro-centric hairstyles' such as dreadlocks and cornrows."  *Id.* at *6.  The court rejected this argument, holding that the policy was facially neutral because "[d]readlocks and cornrows are not immutable characteristic,"  and, therefore, a policy that prohibits these hairstyles is not discriminatory.[3]  *Id.  See also Gadson v. Ala. Dept. of Corr.*, 2013 WL 3879903 (N.D. Ala. July 26, 2013) (dismissing, with leave to amend, plaintiff's disparate impact claim based on ADOC's policy prohibiting dreadlocks); *Campbell v. Ala. Dept. of Corr.*, 2013 WL 2248086 (N.D. Ala. May 20, 2013) (same).

---

[3] *Pitts* involved a claim brought under 42 U.S.C. § 1981, but Title VII and § 1981 employment discrimination claims are analyzed in the same manner. *Standard v. A.B.E.L. Serv., Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998).

Based on these cases, the outcome here is clear.  The EEOC asserts that the policy itself was discriminatory because it was interpreted to prohibit dreadlocks, which is a hairstyle.[4]  Title VII prohibits discrimination on the basis of immutable characteristics, such as race, sex, color, or national origin.  A hairstyle, even one more closely associated with a particular ethnic group, is a mutable characteristic.  Therefore, the Complaint fails to state a plausible claims for relief.

The EEOC asserts several arguments in an attempt to convince the Court that its claim is sufficiently plausible to survive a motion to dismiss.  First, it argues that hairstyle can be a determinant of racial identity.  That argument was rejected, either implicitly or explicitly, in the cases cited above.  Next, it argues that *Rogers* and the cases relying on it are wrongly decided because "their construct of race is far too narrow," (Pl's Resp. 10.)  According to the EEOC, the definition of race should encompass both physical and cultural characteristics, even when those cultural characteristics are not unique to a particular group.  But as the defendant points out, to define race by non-unique cultural characteristics could lead to absurd results.  For instance, a policy prohibiting dreadlocks would not apply to African Americans but would apply to whites.  Moreover, culture and race are two distinct concepts.  Culture is "a set of behavioral characteristics and therefore significantly dissimilar from the immutable characteristics of race and national origin."  *United States v. Guzman*, 236 F.3d 830, 835 (7th Cir. 2001) (Ripple, J., concurring in part and dissenting in part) (discussing cultural heritage versus national origin as a basis for

---

[4] To be clear, the EEOC does not argue that the policy was discriminatorily applied; nor are there any facts alleged in the Complaint that would support an such a claim.

8

departure under United States Sentencing Guidelines).  The EEOC also asserts that the immutable versus mutable distinction should be rejected and that certain traits should be protected from discrimination.   The law, however, prohibits discrimination on the basis of "race, color, religion, sex, or national origin" 42 U.S.C. § 2000e-2(a)(1), and not on the basis of "traits."  Next the EEOC argues that courts have given too much deference to employer grooming policies, which has allowed employers to apply their policies in a discriminatory manner.  That argument says nothing about how the facts alleged in *this* complaint support a claim that *this* employer applied the grooming policy in a discriminatory manner.

Finally, the EEOC contends that it should be allowed to present expert testimony and to develop the facts prior to dismissal.  It alleges that "[ex]pert testimony will help establish underlying factual predicate[s]." (Pl.'s Resp. 13.)  The first is "that Blacks are *primary* wearers of dreadlocks."  (*Id.*, emphasis added.) Since Blacks are not the *exculsive* wearers of dreadlocks, that testimony would not support Plaintiff's claim that a prohibition on dreadlocks discriminates against Blacks.  Next, the EEOC's expert testimony would show that dreadlocks  "are a reasonable and natural method of managing the physiological construct of Black hair, and that dreadlocks are an immutable characteristic, unlike hair length or other hairstyles." (*Id.*)  But a hairstyle is not inevitable and immutable just because it is a reasonable result of hair texture, which is an immutable characteristic.  No amount of expert testimony can change the fact that dreadlocks is a hairstyle. The EEOC would also offer expert testimony that "the wearing of dreadlocks by Blacks has socio-cultural racial significance." (*Id.* 14.)  As discussed, *supra* at 8, Title VII

9

does not protect against discrimination based on traits, even a trait that has socio-cultural racial significance.

**Conclusion**

For the reasons set forth above, the Court finds that the Complaint fails to state a plausible claim for employment discrimination based on race.  Accordingly, the motion to dismiss is hereby **GRANTED**.

**DONE** and **ORDERED** this the 27th day of  March, 2014.


s/*Charles R. Butler, Jr.*
**Senior United States District Judge**